**BRADFORD, ESTATE OF, In Re**

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1613.   Decided May 28, 1940.

Jacobson & Durst, Dayton, for appellants.

Scharrer, Scharrer, McCarthy & Hanaghan, Dayton, for appellees.

**OPINION**

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of appellants' appeal on questions of law from the judgment of the Probate Court of Montgomery County, Ohio.

On October 25, 1934, the will of Earl Bradford was probated in the Probate Court of Montgomery County, Ohio. Pursuant to its terms, Kathryn Bradford, his widow, together with one G. Fleming Bradford (unrelated), were appointed and qualified as executrix and executor respectively.

Item I of the will. in the usual form, provided for the payment of all just debts and funeral expenses.

Item II provided for the payment of enumerated bequests. Special bequests in the sum of $2050.00 are specifically set out in this Item II.

Provision was made for the wife as follows:

"To my beloved wife, Kathryn Bradford, the use and income from my entire estate and so much of the principal sum as she may need for her comfortable support and maintenance, in sickness and in health, and for her last sickness and burial, and for the perpetual upkeep of her grave."

The residuary clause under this same item, recites as follows:

"All the rest and residue of my estate after the above bequests have been fully paid as herein directed, I give, devise and bequeath to Edith Widman, Clara Eby, Emory James, Ernest James and Wilbur James (children of my niece Estella James) share and share alike."

Item III reads as follows:

"ITEM THREE: I hereby nominate and appoint my wife. Kathryn Bradford, Executrix, and my esteemed friend, G. Fleming Bradford, Executor, of this my last will and testament, and having full faith and confidence in their honesty and integrity, I hereby excuse them from giving bond as such; and I give my said Executrix and Executor, or their successors, full power and authority to fully administer my estate; to sell any real estate that I may have at the time of my death, or personal property, and to execute deed or deeds therefor the same as I could were I living, and in the meantime, during the continuance of this trust, they are hereby authorized to sell any real estate and re-invest the funds for the best advantage of my estate; lease or rent real estate; keep the same insured, and look after the best interests of my estate generally; and after the death of my wife, to fully complete the administration of my estate; and for that purpose I also nominate them as testamentary trustees of my estate giving them the same powers as herein indicated."

The testamentary clause then follows.

The above named widow executrix, together with G. Fleming Bradford, her co-executor, after their appointment and qualification continued to act together in their fiduciary capacity until May 4, 1939, on which date G. Fleming Bradford resigned as co-executor.

The transcript of docket and journal entries, to which is attached as an original paper the inventory, discloses the total appraised value of the estate at $31,669.03, of which $28,500.00 was real estate.

The schedule of debts lists allowed claims in the sum of $3468.61. The widow's allowance for year's support was in the sum of $5000.00, and exemptions allowed to her under the statute were $2500.00.

Two partial accounts have been filed, the first under date of November 15, 1935. The total receipts were listed as $5105.47, and total disbursements $4,-721.96, leaving a balance on hand of $383.51. In addition, the account listed assets in six building and loan associations, and a small amount in a Union Trust certificate, totalling $6299.40.

The second partial account, filed December 6, 1938, listed total receipts, which included $562.62 advanced out of rents, totaling the sum of $2425.92. The total disbursements amount to $2425.92. The receipts included $1502.29 received from some of the building and loan associations, and a small dividend from the Union Trust Company. The balance of assets on hand amounted to $4797.11, and were the same as listed in the first account, except in reduced amounts.

In the second account there was also listed the following real estate at its appraised value:

| | |
|---|---|
| 100 acre farm in Van Buren Township | $10000.00 |
| House located at 1103 Creighton Avenue | 6500.00 |
| House located at 1140 Croyden Drive | 6000.00 |
| House located at 1144 Croyden Drive | 6000.00 |

The executrix in this account made further report of the income received from various sources since last report, totaling $2522.80. Claim is made that from this amount the fiduciaries paid a large number of bills for repairs, grain and expenses on the farm and residences, amounting to $2268.82, and that the remainder of $253.98 had been turned over to Kathryn Bradford, widow of decedent, for her care and maintenance in accordance with decedent's last will and testament.

The account also lists the following debts as still existing and unpaid:

Gem City Building & Loan Co.
    balance on mortgage _____$1450.32
Fidelity Building Association,
    balance on mortgage _____  294.65
Widow's year's allowance, bal-
    ance _____ 4400.00
Special bequests provided in de-
    cedent's will _____ 1100.00
    ————————
    Total _____$7244.97

The transcript of docket and journal entries also discloses additional obligations against the estate.

On April 24, 1939, attorney fees were allowed to Francis C. Canny, for representing the estate in litigation brought by one Estella Winston, in the sum of $800.00, and an additional $200 for services in connection with the estate. In the same entry allowances were made to the executor and executrix for extraordinary services, in the sum of $350.00 each.

It is also shown through the transcript of docket and journal entries that application was made for determination of inheritance tax, but evidently the amount was not determined at the time of instituting the present litigation.

It is obvious that there will be a substantial amount of inheritance tax to be paid.

On May 26, 1939, the residuary legatees filed application in the Probate Court for the removal of Kathryn Bradford from her position as executrix of said estate, and the appointment of some suitable and disinterested trustee to be named by the court to further administer the assets and for the protection of the remaindermen.

The first paragraph of the application sets out at length certain historical facts, many of which are included in the statement of the case heretofore made, and which it will not be necessary to further relate at this time.

The actionable complaint is set out as follows:

"At the time of his death, said Earl Bradford was the owner of a farm containing 100 acres and 76/100 of an acre located in Van Buren Township, Mont-gomery County, Ohio. Said Kathryn Bradford and said G. Fleming Bradford after their said appointment, managed said real estate and collected the issues and profits thereof. By the terms of said will, said Kathryn Bradford and G. Fleming Bradford as such executrix and executor were authorized to sell any real estate of said decedent.

On May 5, 1939, one day after the resignation of said G. Fleming Bradford as such executor, Kathryn Bradford as executrix of the estate of said Earl Bradford, claiming to act under her power and the authority of said will, allegedly sold to Anna E. Bradford and executed and delivered to the said Anna E. Bradford, a deed for the above described real estate, for the purported consideration of $9000.00. Such alleged sale of said realty to Anna E. Bradford was made privately, and had been arranged prior to said May 5, 1939 and while said G. Fleming Bradford was the co-executor of said estate. Said Anna E. Bradford is the mother of said G. Fleming Bradford. The price for which said real estate was so allegedly sold to Anna E. Bradford and conveyed to her, is totally inadequate, far below the actual value thereof and is much less than could and should have been obtained therefor, all of which said Kathryn Bradford then and there knew.

The said action of said Kathryn Bradford is fraudulent and tends to diminish and destroy the remainder interests granted to these applicants by the said will of said Earl Bradford, all of which said Kathryn Bradford then and there knew.

The applicants represent to the court that the conduct aforesaid of said Kathryn Bradford as such executrix, is fraudulent and is jeopardizing the remainder interests of these applicants in the estate of said Earl Bradford and their rights as such remainder men should be protected by this court."

Then follows the prayer as heretofore noted.

Following notice, the cause came on for hearing with all interested parties being present in person and by counsel,

and at the conclusion of the testimony and argument of counsel, the Probate Court, on October 27, 1939, overruled the application for removal.

Motion for new trial was duly filed and overruled. Within due time applicants gave notice of appeal on questions of law.

Appellants' assignments of error are set out in the following separately numbered three specifications:

1. That the judgment of the Probate Court was contrary to law.

2. That it is against the weight of the evidence.

3. That the court erred in overruling the motion of the remainder men to set aside its finding and grant a new trial.

These specifications may be summarized under the single claim that the finding and judgment of the Probate Court is against the weight of the evidence and contrary to law.

The claimed error required a complete reading and very careful analysis of the evidence.

This we have endeavored to do.

The general character of the evidence may be classified under the following three headings:

1. The direct and cross-examination of Kathryn Bradford, G. Fleming Bradford and Anna E. Bradford, very fully bringing out the negotiation and sale of the 100 acre farm, the manner and method of payment and the connection of G. Fleming Bradford therewith.

2. The claim and denials that Andrew Eby, Jr., on Thanksgiving Day, 1934, made a proffer to pay $10,000.00 for the farm at that time or at any time in the future that Mrs. Bradford might desire to sell it; and further that this proffer was repeated at a later date.

3. The testimony of ten witnesses as to the reasonable market value of the farm.

We now take up the evidence in the above order.

We must start with the understanding that the will of Earl Bradford, deceased, gave very broad powers to his executors in making sale of real estate coming into their hands as fiduciaries.

This will gave them absolute power to make sale of any and all real estate, either at public or private sale, without procuring an order from the Probate Court, just the same as the decedent might have done had he been living. Of course, the law would impose upon the fiduciaries the duty of acting in good faith.

It is obvious to say the least, that the executors adopted an ill advised technique in making the sale to the mother of G. Fleming Bradford, one of the executors. Their own protection from criticism, just or otherwise, should have prompted them to do more than follow the letter of the will. Had they done so, this unfortunate litigation would have been avoided. Regardless of the above observation, the question remains as to whether or not the evidence supports the application to the point of requiring the removal of Mrs. Kathryn Bradford as executrix.

The testimony of Kathryn Bradford and Mrs. Anna Bradford was to the effect that they and they alone, negotiated the deal for the sale and purchase of the 100 acre farm. Mrs. Kathryn Bradford said that she desired to sell the farm because the buildings and fences were in a bad state of repair, needing immediate attention, and that she did not have the money with which to make the improvements. She admitted that she did not advertise the premises for sale, either by newspaper advertising or for sale notices on the farm; that she did not consult or place it in the hands of any real estate agent for sale; that she did not consult the grandnieces and nephews having the reversionary interest, nor did she contact any other person relative to the sale. Her first and only price submitted to Mrs. Anna Bradford was $9,000.00, and accepted without effort to procure a greater price. Neither of the two women displayed any particular business ability.

G. Fleming Bradford was called as a witness and without any apparent evasion admitted his knowledge and connection with the farm deal. He corroborated both Kathryn Bradford and his mother that they negotiated the

deal without his participation, other than stating to his mother that the farm was worth $9,000.00. After the agreement had been entered into between Kathryn Bradford and Anna Bradford, the mother, G. Fleming Bradford took charge of the necessary steps for the financing. He made the application, signing his mother's name, for the mortgage loan of $6500.00 with one of the building and loan associations. He also personally arranged for the balance of the consideration through his personal note. After the deed was made, he took charge of and made repairs to the buildings, which he says totaled approximately $1200.00. He paid the material and labor with his own personal check. While the claim is not made in the application for removal, yet it is now argued that Mr. G. Fleming Bradford was in reality the purchaser and that his mother was doing nothing more than lending her name. This is denied by both Mr. G. Fleming Bradford and his mother. The co-executor, G. Fleming Bradford, resigned as such executor on the day before the execution of the deed and stated that this action was taken on the advice of his counsel.

Under the second classification, the evidence in substance was as follows:

Mr. Andrew Eby, Jr., husband of one of the residuary legatees, testified that on Thanksgiving Day following the death of Earl Bradford, Mrs. Kathryn Bradford was at his home for the annual Thanksgiving dinner, and also present were other grand nieces and nephews. That upon this occasion he, in response to a statement of Kathryn Bradford that she did not know what she would do with the farm, stated to her that he would give her $10,000.00 in cash, either that day or any time in the future that she might desire to sell. The testimony of Mr. Eby was corroborated by several other witnesses, being nieces and nephews or their husbands or wives. Mr. Eby also testified that several years later he renewed the offer. No claim was made that this offer was ever made or communicated to Mr. G. Fleming Bradford, and he testified in substance that he never heard

of it. Mrs. Kathryn Bradford denied that any such statement was ever made to her. In her cross-examination she admitted being present at the Eby home on the Thanksgiving Day named. It was drawn out in the evidence that it had been the custom before Mr. Earl Bradford died that he and Mrs. Bradford for a number of years had spent Thanksgiving Day at Mr. Eby's home.

After the case was closed, the court permitted it to be opened up on application of counsel for Mrs. Kathryn Bradford, for the purpose of introducing what was claimed to be newly discovered evidence. Father Harry J. Ansbury, a brother of Mrs. Kathryn Bradford, testified that in the year, 1934, he had charge of a church in Cincinnati, Ohio, and by prearrangement he and his sisters, Misses Ann and Mary Ansbury, and a Mr. and Mrs. Amann, on Thanksgiving Day, 1934, drove to the home of his sister, Mrs. Kathryn Bradford, for Thanksgiving dinner. That his sister prepared the turkey and mince pies which they took with them. That he remembers the date because it was the first Thanksgiving following the death of her husband. In support of his evidence, he displayed a calendar pad, so made as to provide daily notations. Father Ansbury further testified that it was his habit daily to make notations of the main events of the day. One sheet was withdrawn from the calendar pad, marked "Executrix's Exhibit A" and introduced in evidence. The printing at the top shows Thursday, November 29, 1934, and under it Thanksgiving Day. On the lines thereunder is written: "Mass 8 A. M." under this "Left for Dayton 9:30" and under that, "With Amanns," and under that "Home 6:30 P. M." Both of his sisters and Mrs. Amann fully corroborated Father Ansbury.

Of course, the purpose of this testimony was to controvert the possibility of Mrs. Kathryn Bradford's being present at Mr. Eby's on Thanksgiving Day, 1934. Father Ansbury was also interrogated as to Thanksgiving Day, 1935. He testified that before that date he had been given charge of a church in Dayton, and that his sister, Kathryn,

was at home on each subsequent Thanksgiving. Some mention was made of the year 1933, but this necessarily was eliminated by the evidence that Mr. Bradford was still living on Thanksgiving Day, 1933.

Under the third classification we refer to the testimony as to the reasonable market value of this farm at the time it was sold.

Ten witnesses were called who testified as to the value. The highest value was placed at $17,500.00, and the lowest at $9,200.00. The witnesses placing the value in the higher brackets claimed prospective value through the possibility of platting. The farm was located some two and one-half to three miles south of the corporation limits of Oakwood, and some six or seven miles from the center of the City of Dayton. Some witnesses thought that the subdivided acreage around Dayton was overdone and that this farm by reason of its topography and location should be appraised solely as farm land. All who knew anything about the buildings testified that they were in bad condition.

We have only endeavored to hit the high spots in the narration of the evidence. To set out in detail all pertinent and important parts of the testimony would require the substance of the bill of exceptions.

The Probate Court in deciding the case rendered a written opinion and we have before us copy of this opinion. Each and every phase of the case is discussed and reasons given for resolving conclusions in favor of the executrix.

On the question of the standing offer of $10,000.00 for the farm being made by Mr. Eby, the court determined that this fact was not established by a preponderance of the evidence.

On the question of the value of the farm, it was the conclusion of the court that the high values given by some witnesses on the theory that the farm might be platted or subdivided was attaching a speculative value not warranted in his judgment. It was the court's determination that he would follow the testimony of the witnesses who made the appraisal as a farm, taking into consideration the location, quality of the soil, condition of buildings and other situations naturally attending and influencing farm values. The court made the observation that appraisal values were more or less speculative at best, and then followed with the conclusion that in his judgment the sale of the premises was not so far out of line with the true value as to indicate bad faith.

We have no difficulty in following the court on the above findings.

The well recognized rule is invoked that on factual questions a reviewing court will accept the determination of the fact finding entity, be it jury or court, unless so manifestly against the weight of the evidence as to shock the conscience to permit it to stand.

On the remaining question we have much more difficulty.

We now repeat what was indicated in the earlier pages of this opinion that the plan of conducting this sale and purchase is not commended. We certainly would not recommend it as the proper technique. This worry is due to the fact that the purchaser was the mother of G. Fleming Bradford, the executor. It ought to have appealed to him that a sale made under such circumstances woud arouse suspicion.

The Probate Court in deciding the case very fully discusses the implications of fraud that might arise. It was the judgment of the Probate Court that the open manner in which Mr. G. Fleming Bradford, executor, acted throughout the negotiations and sale of the farm argued very strongly against any intentional wrongdoing. The court made the observation that generally when men are intending to do wrong, they surround the transaction with secrecy. Certainly Mr. Bradford did not do this, but frankly narrated through his evidence, his entire connection with the transaction.

It is evident that the trial court was impressed with the honesty of both executrix and executor, and the mother, Mrs. Anna Bradford.

Attention was also called to the fact that the decedent, Mr. Bradford, held Mr. G. Fleming Bradford in very high esteem. He gave to him, in connection with his widow, the fullest power to handle and dispose of all the assets of his estate. Specific request was made in the will that no bond be required. Where a decdent in his last will and testament gives directions of this kind, courts will be very slow·to remove such a fiduciary and appoint a stranger. Of course, if it is clearly shown that such fiduciary, either or both, acted fraudulently or in bad faith, there should be no hesitation in removing such fiduciary for the reason that by such conduct they have abused the confidence that the testator resposed in them. The trial court very positively declined to subscribe to the view that any fraud or bad faith was shown. With some trepidation we are constrained to accept the finding of the trial court, and therefore affirm the judgment and remand for further proceedings according to law.

Entry may be drawn accordingly.

HORNBECK, PJ. & GEIGER, J., concur.